**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

SYLVETTE M. SEIN, et al.,

Plaintiffs,

v.                                                            CIVIL NO. 21-1365 (HRV)

OSCAR SANTAMARIA-TORRES,

Defendant.

**OPINION AND ORDER**

**I.   INTRODUCTION**

This is a diversity jurisdiction action for damages resulting from a car accident that occurred on December 1, 2019, on Salvador V. Caro Avenue in Carolina, Puerto Rico. The plaintiffs allege that defendant Oscar Santamaría Torres (hereinafter "Santamaría" or "defendant") caused the accident by crossing into the opposite lane, impacting the vehicle in which Mrs. Sylvette M. Benetti and Dr. Rafael Seín Siaca were travelling. Their, daughter, Gabriella Seín (hereinafter "Seín" or "co-plaintiff"), a resident of Paris, France, is seeking $175,000.00 for the alleged severe emotional distress resulting from the accident involving her parents.

During the discovery phase, co-plaintiff Seín was requested to produce her psychiatric record with Dr. Véronique Fouilleron (hereinafter "Dr. Fouilleron") a psychiatrist that treated her in France prior and after the accident suffered by her parents.

1

Ultimately, Ms. Seín did not produce the record, alleging that despite numerous efforts, she could not obtain it because French law precludes its disclosure.

Santamaría now moves to dismiss with prejudice co-plaintiff Seín's claim for emotional damages pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v), due to her failure to produce her psychiatric record with Dr. Fouilleron. (Docket No. 88). Plaintiffs opposed (Docket No. 93), and defendant replied. (Docket No. 96).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The following events are pertinent to the parties' respective allegations concerning the discovery dispute at issue.

On November 29, 2023, during Ms. Seín's deposition, defendant requested her psychiatric record with Dr. Fouilleron. (Docket No. 88-1, Gabriella Sein's deposition transcript, pg. 18, lines 19-24; pgs. 19-20; and pg. 21, lines 1-14).

On December 6, 2023, defendant sent an email to plaintiffs' counsel memorializing the documents and information that were requested during plaintiffs' depositions, including Ms. Seín's psychiatric record with Dr. Fouilleron. (Docket No. 88-2).

On January 18, 2024, defendant sent plaintiffs' counsel a follow-up email regarding the documents and information requested during plaintiffs' depositions. (Docket No. 88-3).

On January 22, 2024, Ms. Seín sent an email to her attorney stating that she had spoken to Dr. Fouilleron and she "could not provide the documents." (Docket No. 93-2).

2

On March 6, 2024, defendant sent a third email to plaintiffs' counsel regarding the outstanding documents production, including the psychiatric record. Defendant's counsel asked that the information be provided within five days. (Docket No. 88-4).

On March 8, 2024, plaintiffs' counsel responded via email, stating that the requested documents would be provided "in the following days." (Docket No. 88-5).

On March 11, 2024, Ms. Seín sent an email to her counsel where she expressed that she had a meeting with Dr. Fouilleron on March 22 to discuss "the letter." (Docket No. 93-3).

On March 27, 2024, defendant sent another email to inquire about the document production, including the psychiatric record, as it had not yet been produced. (Docket No. 88-6). On that same day, plaintiffs' counsel responded that Ms. Seín had been informed of certain French Law restrictions with respect to the disclosure of her psychiatric records but that she would visit Dr. Fouilleron "next Friday" and explain the need of the records to her physician. (Docket No. 88-7).

On March 29, 2024, plaintiffs' counsel sent a follow-up email with a letter from Dr. Fouilleron certifying that she had provided psychiatric treatment to co-plaintiff Seín for an "anxiety-depressive state." The email also stated that Ms. Seín had been informed that pursuant to French Law the record was confidential and could not be provided without a French court order. (Docket Nos. 88-8 and 93-5).

On April 1, 2024, defendant responded to the March 29 email stating that counsel had conducted a Google search and found an official webpage of the French Republic informing that in France a patient has a right to obtain a copy of her medical record. Hence, defendant's counsel understood that Ms. Seín could request a copy of her record

3

without the need for a French court order. (Docket No. 88-9). On that same day, Ms. Seín's counsel replied that "[b]ased on [the] email, [he] would be writing to Gabriela's psychiatrist requesting a copy of her medical records." (Docket No. 88-10). Accordingly, counsel sent Dr. Fouilleron a letter formally requesting a copy of her medical record. (Docket No. 93-6).

On April 7, 2024, French attorney Melanie Gstalder sent Ms. Seín a letter stating that she had a right to receive the medical records from her psychiatrist. If the doctor refused to provide the records, the attorney advised that Ms. Seín could contact "the Council of the Order of Physicians, the CNIL, and the Judicial Court." (Docket No. 93-7).

On April 12, 2024, during a status conference, plaintiffs informed that the production of Ms. Seín's psychiatric record was pending and that it was expected the same would be produced within 10 days. The court granted said term, which was included in the Minute of the Proceedings. (Minutes at Docket No. 82.)

On April 15, 2024, plaintiffs' counsel sent an email to defendant's counsel explaining that Ms. Seín was unable to meet with Dr. Fouilleron to obtain the record but that she would meet her on April 25, 2024. (Docket No. 88-11).

On May 30, 2024, plaintiffs' counsel sent defendant a communication from Dr. Fouilleron stating that French law prohibits the transmission of certain portions of psychiatric records, particularly treatment notes, and that only a letter certifying that she had provided psychiatric treatment to co-plaintiff Seín could be produced. In addition, in said communication, plaintiffs' counsel informed that on that day Ms. Seín was supposed to contact her lawyer [in France] to talked to Dr. Fouilleron regarding the production of the record. (Docket No. 88-12).

On June 4, 2024, defendant sent a communication to plaintiffs' counsel stating that considerable time had passed since the request for the medical records and that if the record was not produced within a week, defendant would move to dismiss Ms. Seín's claim for emotional damages. (Docket No. 88-13). Plaintiffs' counsel responded that same day, apologizing for the delay, and reaffirming that the psychiatric record could not be disclosed due to French law restrictions and providing a medical certificate from Dr. Fouilleron. (Docket Nos. 88-14 and 93-11).

On June 10, 2024, during a status conference, defendant's counsel inquired whether the medical certification provided as to co-plaintiff Seín's psychiatric treatment was the only item to be produced. In response, counsel for the plaintiffs informed that indeed it was the only documentation that was produced, and that disclosure of the complete psychiatric record could not be obtained. (Docket No. 87). At the status conference, counsel for defendant Santamaría requested time to move the Court for the appropriate remedy. (*Id.*) I granted the request and gave defendant until June 25, 2024, to do so.

On June 25, 2024, defendant filed his motion to dismiss co-plaintiff Seín's emotional damages claim. (Docket No. 88). The plaintiffs filed their opposition on July 8, 2024. (Docket No. 93). Defendant Santamaría replied on July 19, 2024. (Docket No. 96).

### III. APPLICABLE LAW AND DISCUSSION

In his motion to dismiss, defendant posits that Ms. Seín did not comply with Fed. R. Civ. P. 34, and that the only possible remedy is dismissal with prejudice of her

emotional damages claim. I will first examine whether Ms. Seín failed to comply with her discovery obligations, and, if so, what is the appropriate sanction.

### A. Obligation to produce the medical record

Fed. R. Civ. P. 34 allows a party to serve a request on any other party, within the scope of Rule 26(b), to produce a copy of any document under the responding party's control that is relevant to the plaintiff's complaint. "Control," within meaning of rule is not limited to actual physical possession of the document; rather, documents are under a party's control when that party has the right, authority, or ability to obtain the documents upon demand. *Merchia v. Kautter,* 336 F.R.D. 396, 398 (D. Mass 2020)(gathering cases).

According to defendant, despite multiple requests, Ms. Seín did not provide the medical record requested and did not demonstrate her inability to overcome the restrictions supposedly imposed by French privacy laws. Specifically, co-plaintiff Seín has not cited, or pointed to any specific French legal provision to substantiate the claim that French law prohibits the production of medical records.

Ms. Seín responds that she was diligent in her attempts to obtain her medical records from Dr. Fouilleron, even retaining a French attorney to assist her in said request. Furthermore, she claims that the records were unavailable through no fault of her own but because her psychiatrist refused to provide the record due to French medical confidentiality laws. In any case, she states, medical records are not essential to determine emotional damages and it should be left to the jury to assess the damages with the evidence presented at trial.

The Supreme Court has held that issues of comity between nations are implicated where documents sought in a federal district court proceeding may be subject to protections provided by foreign law. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546, 107 S. Ct. 2542, 2557, 96 L. Ed. 2d 461 (1987). In that sense, "American courts" . . . should . . . take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Id*. This cannon holds especially true with discovery-related issues. *Id*. at 542 ("It is well known that the scope of American discovery is often significantly broader than is permitted in other jurisdictions, and we are satisfied that foreign tribunals will recognize that the final decision on the evidence to be used in litigation conducted in American courts must be made by those courts.").

Guided by those principles of comity, the Court set forth a list of factors to consider when determining whether to limit the scope of a district court's power to order foreign discovery "in the face of objections by foreign states."[1] *Id*. at 544. In this case, however, plaintiffs have not convinced me that French law indeed prohibits the production of the medical records at issue, a matter as to which they have the burden.

---

[1] These factors include "(1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *AnywhereCommerce, Inc. v. Ingenico, Inc.*, No. 19-CV-11457-IT, 2020 WL 5947735, at *1 (D. Mass. Aug. 31, 2020), on reconsideration, No. 19-CV-11457-IT, 2021 WL 2256273 (D. Mass. June 3, 2021).

Defendant's counsel first requested Ms. Seín's medical records during her November 29, 2023, deposition. (Docket No. 88-1). As early as January, 2024, Ms. Seín stated in an email to her attorney that she believed that the record could not be produced due to French law. (Docket No. 93-2). However, she did not provide the basis for this conclusion.[2] In fact, defendant is correct in stating that none of Ms. Seín's communications contained a detailed explanation—other than what Dr. Fouilleron arguably told her—of the legal basis for refusing to produce the record. It appears that Ms. Seín took her doctor's explanation at face value. Despite numerous requests and follow-up emails from defendant, (*see* Docket Nos. 88-4 and 88-6), it wasn't until defendant's April 1, 2014 email questioning the legal basis of the refusal to produce that Ms. Seín's counsel formally requested the medical records from Dr. Fouilleron. (Docket No. 93-6).

What's more, on April 7, 2024, Melanie Gstalder, the French attorney that plaintiff had retained, sent Ms. Seín a letter stating that she had a right under French law to receive the medical records from her psychiatrist and advising on next steps should the doctor refuse. (Docket No. 93-7). Surprisingly, there is no indication on the record that plaintiffs' attorney informed defendant of the attorney's opinion, which clearly contradicts Dr. Fouilleron's obstinate refusal to produce the record.

---

[2] *See* Ms. Seín's March 27 email reiterating that she had been informed of certain French Law restrictions with respect to the disclosure of her psychiatric records that she would discuss with Dr. Fouilleron (Docket No. 88-7), and her subsequent email stating that the record was confidential and could not be provided without a French-court order. (Docket No. 88-8).

Instead of notifying defendant and elevating the request for the record to the governmental and regulatory bodies mentioned in Ms. Gstalder's letter, defendant sat in the proverbial laurels. During a status conference held on April 12, 2024, plaintiffs informed that the production of the psychiatric record would occur within 10 days. (Docket No. 82.). More than 6 six weeks later, on May 30, 2024, plaintiffs' counsel sent defendant a communication stating that French law prohibits the transmission of certain portions of psychiatric records and forwarding only a certification from Dr. Fouilleron. (Docket No. 88-12). And on June 4, 2024, plaintiffs' counsel responded to an email from defendant and reaffirmed that the psychiatric record could not be disclosed due to French law restrictions. (Docket Nos. 88-14 and 93-11). The communication does not explain the legal basis and does not indicate any further steps taken by Ms. Seín to obtain the records. That final response came a mere two and a half months before the trial is scheduled to begin.[3]

Looking at these events, I am hard pressed to side with co-plaintiff Seín's justifications. Although she claims that she did everything in her power to obtain the records, her actions say otherwise. While defendant was repeatedly seeking a response to their discovery requests, and conducting their own research on French privacy law, Ms. Seín relied solely on her doctor's representations. Even after her attorney contradicted the doctor's view and provided a recourse, Ms. Seín admittedly chose not to pursue it.

---

[3] Trial is set for August 26, 2024. (Docket No. 79).

Ms. Seín stated that she instead went back to Dr. Fouilleron, who then consulted the "Orders of Physicians." (Docket No. 93 at pg. 4). On her next visit, Dr. Fouilleron told her that the Orders of Physicians advised that the only information that could be provided from the medical record was "correspondence, letters and laboratory results and that pursuant to French legislation, all information in the record related to third parties could not be disclosed." (*Id.*) Again, Ms. Seín was content with the doctor's response and gave a definite response to defendant, stating that the records could not be produced.

In her response to the motion to dismiss, Ms. Seín admits that she had other options to seek the records but asserts that she chose not to follow through because she did not have the financial means to sue her doctor; did not know how long the process would take; and did not want to jeopardize her long-standing doctor/patient relationship with Dr. Fouilleron. (Docket No. 93 at pgs. 5-6). Even though her attorney's suggestions included options other than litigation, such as contacting the Council of the Order of Physicians and the CNIL (otherwise known as the French Data Protection Authority), (Docket No. 93-7), it appears that Ms. Seín's desire to avoid a riff with her doctor guided her actions.

Though I am mindful of the comity concerns that the Supreme Court noted in *Societe Nationale*, I find that plaintiffs have not met their burden to show that French laws bar production of the discovery sought. *AnywhereCommerce, Inc.,* 2020 WL 5947735, at *2 (D. Mass. Aug. 31, 2020)("Importantly, as the party seeking to rely on the [foreign statute], it is Defendants' burden to demonstrate that these laws bar production of the documents at issue.").

Plaintiffs cite one statute, French Statute no. 68-678 of July 26, 1968, known as the French Blocking Statue, which prohibits the disclosure of sensitive economic, commercial, industrial, financial, or technical information by French natural and legal persons to foreign authorities or its use in foreign judicial or administrative proceedings. Courts, however, have found that because both France and the United States are signatories of the Hague Convention, producing evidence pursuant to the Hague Convention's procedures[4] does not violate the French Blocking Statute. *See Salt River Project Agric. Improvement & Power Dist. v. Trench France SAS,* 303 F. Supp. 3d 1004, 1006 (D. Ariz. 2018).

Noticeably, plaintiffs did not address the rights contained in the statutes that Ms. Gstalder highlighted in her letter: Articles 12 and 15 of the GDPR, Articles L1111-7 to 9 of the Public Health Code Articles R 1111-1 to 7 R1112-1 to 9 of the Public Health Code and the Order of March 5, 2005 amended. (Docket No. 93-7). These provisions apparently gave Ms. Seín the right to obtain her records. Therefore, I find that plaintiffs have not established that French law prohibited the disclosure of Ms. Seín's psychiatric treatment record.

In the alternative, plaintiffs argue that the production of the medical records was not needed to establish a claim for emotional damages since it is up to the jury to weigh

---

[4] The Convention outlines two distinct procedures. One requires the Court to send a letter of request to French authorities and a French judge would oversee discovery in France. The other allows for the appointment of a private attorney in France to serve as "commissioner" and oversee production in France. *See Salt River Project Agric. Improvement & Power Dist.,* 303 F. Supp. 3d at 1006 (citing Hague Convention Arts. 1–17).

the evidence at trial and assess Ms. Seín's damages. In response, Defendant clarifies that he is not saying that she could not establish her emotional damages claim at trial[5], but that the failure to provide timely discovery puts him at a disadvantage to challenge her claims, including the nature, extent, and quantification of said damages, as well as her credibility.

Again, Rule 34 allows a party to request production of any document under the responding party's control that is **relevant** to the plaintiff's complaint. Fed. R. Civ. P. 34. (emphasis ours). According to defendant, Ms. Seín's medical records are not merely relevant, but crucial to her claim of emotional damages. (Docket No. 88 at pg. 9). He states that without these documents, he will not be able to mount a proper defense at trial. Furthermore, he claims that by directly linking the defendants liability and her allegedly severe emotional distress to the issue of her mental health, co-plaintiff has made her present and past condition a critical issue in the case.

The substance of co-plaintiff Seín's claims of emotional damages, as alleged in the complaint, is that "she has suffered great emotional pain while assisting her mother and sharing with her all the difficulties and suffering that her mother has confronted." (Docket No. 1 at ¶ 36). Ms. Seín was undergoing treatment with Dr. Fouilleron before and after the accident that gave rise to this suit. As stated in Dr. Fouilleron's letter, she had been treating Ms. Seín for anxiety-depressive disorder between September 2019 and

---

[5] "While evidence from a physician or other mental health professional is not a sine qua non to an award of damages for emotional distress, the absence of such evidence is relevant in assessing the amount of such award." *Trainor v. HEI Hospitality, LLC.*, 699 F.3d 19, 32 (1st Cir. 2012)(*citing Koster v. TWA*, 181 F.3d 24, 36 (1st Cir. 1999)).

January 2022 with social anxiety symptoms persisting up to the date of the letter, June 1, 2024. (Docket No. 93-11). Hence, by centering her claim on the "emotional pain" she endured, Ms. Seín made her present and past condition a critical issue in controversy.[6]

I thus agree with defendant that Ms. Seín's medical records are certainly relevant to her claim of emotional damages and should have been produced. *Gerald v. Univ. of Puerto Rico*, No. CV 08-2084 (JP), 2011 WL 13351282, at *2 (D.P.R. July 28, 2011)(*citing Rankin v. Liberty Mutual Insurance Co.*, 1995 WL 131390, at *1-2 (1st Cir. Mar. 27, 1995) (holding that where plaintiff has placed her mental state at issue, her psychiatric records are "relevant and discoverable.")

### B. Appropriate sanction

A party that fails to obey an order to provide or permit discovery is subject to sanctions. *See* Fed. R. Civ. P. 37(b)(2)(A). Sanctions include dismissing the action in whole or in part – Rule 37(b)(2)(A)(v) – and prohibiting the disobedient party from supporting a designated claim, or from introducing designated matters in evidence – Rule 37(b)(2)(A)(ii).

The First Circuit has set out a non-exhaustive list of factors to consider when reviewing whether Rule 37 sanctions should be imposed. *Vallejo v. Santini–Padilla*, 607

---

[6] "Generally, where a plaintiff puts his or her mental condition in controversy, the plaintiff waives the psychotherapist patient privilege." *Gerald v. Univ. of Puerto Rico*, No. CV 08-2084 (JP), 2011 WL 13351282, at *2 (D.P.R. July 28, 2011)(citing *Rankin v. Liberty Mutual Insurance Co.*, 1995 WL 131390, at *1-2 (1st Cir. Mar. 27, 1995); *see also Koch v. Cox*, 489 F.3d 384, 391 (D.C. Cir. 2007); and *Schoffstall v. Henderson*, 223 F.3d 818 (8th Cir. 2000)). Courts have likewise exercised their authority to order the release of medical records. *Dodge v. Signature Flight Support Corp.*, 509 F. Supp. 3d 1, 2–3 (D. Mass. 2020)("The Court has the power to compel parties to authorize the release of their medical records to an opposing party where the records contain discoverable material."); *Lath v. BMS Cat & Amica Mut. Ins. Co.*, No. 16-CV-534-LM, 2019 WL 8219478, at *4 (D.N.H. Aug. 5, 2019)(gathering cases).

F.3d 1, 8 (1st Cir. 2010). These include "the severity of the discovery violations, the legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." *Ramos-Lopez v. United States*, No. CV 22-1029 (MDM), 2024 WL 531277, at *5 (D.P.R. Feb. 8, 2024); *see also Colon v. Blades*, 268 F.R.D. 137, 141 (2010)(*quoting Malot v. Dorado Beach Cottages Assocs.*, 478 F.3d 40, 44 (1st Cir.2007)).

The choice of sanction lies within the district court's discretion and appellate review for abuse of discretion is highly deferential. *Ramos-Lopez*, 2024 WL 531277, at *5 (*citing AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435 (1st Cir. 2015)). On the procedural side, the First Circuit considers "whether the district court gave the offending party notice of the possibility of sanctions and the opportunity to explain its misconduct and argue against the imposition of such a penalty." *AngioDynamics, Inc.*, 780 F.3d at 435.[7]

After careful balancing of the relevant factors, I find that dismissing with prejudice the emotional damages claim is not proportionate to the circumstances surrounding Ms. Seín's failure to comply with discovery rules. Ms. Seín's conduct was not "severe, repeated, and deliberate"[8] and she cannot be deemed "an obstructionist

---

[7] Procedurally, I am satisfied that the court has given Ms. Seín an opportunity to explain and argue against the imposition of Rule 37 penalties.

[8] ". . . Defendants' conduct here was severe, repeated, and deliberate, with no legitimate or mitigating explanation for noncompliance." *AngioDynamics, Inc.,* 780 F.3d at 435 (1st Cir. 2015).

14

adversary." *Crispin–Taveras v. Municipality of Carolina,* 647 F.3d 1, 7 (1st Cir.2011). *See also Tower Ventures, Inc. v. City of Westfield,* 296 F.3d 43, 46 (1st Cir.2002) ("To be sure, dismissal ordinarily should be employed as a sanction only when a [party's] misconduct is extreme."); and *Esposito v. Home Depot U.S.A., Inc.,* 590 F.3d 72, 79 (1st Cir. 2009)(same).

Most importantly, there are mitigating factors for the noncompliance. Although Ms. Seín could have exhausted all administrative and regulatory avenues to obtain the records, she did formally request them on numerous occasions and even hired a French attorney to provide a legal opinion. The next step would have certainly required the expenditure of economic resources and to perhaps strain her long-standing relationship with her doctor, both legitimate attenuating circumstances.

Looking at her overall conduct in this case, I cannot conclude that the failure to provide the records was willful. These mitigating circumstances convince me that dismissal is too harsh a sanction. *See Companion Health Servs., Inc. v. Kurtz,* 675 F.3d 75, 85 (1st Cir. 2012)(Generally, a severe sanction, such as default or dismissal, is inappropriate in most cases when based on one incident).

There are lesser sanctions that would adequately lessen the prejudice to defendant while allowing adjudication of the case on its merits. *Malot v. Dorado Beach Cottages Assocs.*, 478 F.3d at 43. Although a district court need not consider or try lesser sanctions before imposing default (or dismissal) for discovery violations, a failure to consider lesser sanctions can contribute to a finding that the district court abused its discretion. *Companion Health Services, Inc.*, 675 F.3d at 85.

Accordingly, I find that Ms. Seín shall be allowed to testify about her emotional suffering but is precluded from testifying about, or introducing any evidence of, the psychiatric treatment she received, including diagnosis, medications prescribed, and Dr. Fouilleron's recommendations and assessment. This sanction is in my view commensurate with the discovery infraction. *See Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35-36 (1st Cir. 2001)(gathering cases about exclusion and restrictions of testimony); *see also EEOC v. Triple-S Vida, Inc.*, Civ. No. 21-1463 (FAB-MDM), 2023 WL 9183950, 2023 U.S. Dist. LEXIS 233134, at *61-62 (D.P.R. Aug. 25, 2023)(imposing sanction under Fed. R. Civ. P. 37(b)(2)(A)(ii) to prohibit disobedient party from introducing evidence at trial "that other employees were transferred as a reasonable accommodation, which is the information not responded to.").

## IV. CONCLUSION

In view of the above, defendant's motion to dismiss with prejudice Gabriella Seín's claim of emotional damages is hereby DENIED. However, considering her failure to fully comply with her discovery obligations under Fed. R. Civ. P 34, she is precluded from introducing evidence, testifying about, or referencing, her psychiatric treatment.

**IT IS SO ORDERED**

In San Juan, Puerto Rico this 22nd of July, 2024.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE
